Stephan **MICROMANOLIS**, Appellant,

v.

The **WOODS SCHOOL, INC.**

No. 92–1651.

United States Court of Appeals, Third Circuit.

Argued Feb. 23, 1993.

Decided April 2, 1993.

---

Meyer A. Bushman (Argued), Abrahams, Lowenstein, Bushman & Kauffman, Philadelphia, PA, for appellant.

Thomas A. Brophy, Audrey L. Jacobsen (Argued), Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, PA, for appellee.

Before: HUTCHINSON, NYGAARD and SEITZ, Circuit Judges.

### OPINION OF THE COURT

SEITZ, Circuit Judge.

Stephan Micromanolis ("plaintiff") brought this tort action to recover for injuries sustained at a swimming pool on the property of the Woods School, Inc. ("defendant"). The district court had diversity jurisdiction under 28 U.S.C. § 1332 (1988). We have jurisdiction over this appeal from the final order of the district court granting summary judgment for defendant under 28 U.S.C. § 1291 (1988).

### I. FACTUAL BACKGROUND

On this appeal from the grant of summary judgment, "[t]he non-movant's allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). We turn to the undisputed facts.

On June 6, 1989, the date of the accident, plaintiff was nineteen years old. At approximately 1:00 a.m., plaintiff and four or five acquaintances (two women and two or three men) left a party they had been attending to go swimming in defendant's pool. Plaintiff had never before been to the pool and knew that he was not permitted to swim there. Nevertheless, he had been told that the pool was "an easy place to swim."

Plaintiff and his acquaintances climbed over a four-foot fence to enter defendant's property. They then walked for a few minutes to reach the pool area. Plaintiff and several others then climbed over a six-foot fence surrounding the pool area. At least one person entered the pool area by crawling under the fence.

Defendant's pool is 75 feet long and, when open for the season, the depth of the water slopes from 3 feet to 10 feet. On the date of the accident the pool was in its "winterized" state and, therefore, the water was approximately 1 feet below the depth it would have been otherwise. Shortly after 1:00 a.m., plaintiff dove headfirst into the middle of the unlighted pool without first checking the depth of the water. Plaintiff's head struck the pool bottom and his body "instantly went numb." As a result of the accident, plaintiff was rendered a quadriplegic.

On June 4, 1991, plaintiff filed the complaint in this action alleging that his injuries were caused by defendant's negligent, reckless, willful and wanton acts. Subsequently, defendant filed a motion for summary judgment. The record before the district court consisted of the pleadings, answers to interrogatories and deposition testimony. On July 10, 1992, the district court granted defendant's motion. This timely appeal followed.

### II. DISCUSSION

The district court granted defendant's motion for summary judgment after concluding, as a matter of law, that defendant did not owe plaintiff *any* duty of care. As an alternate basis for its judgment, the court concluded that, if defendant owed plaintiff a duty it was only to refrain from wilful and wanton misconduct. The court then concluded, as a matter of law, that defendant had not acted wilfully or wantonly. We examine these conclusions in turn.

Our review is plenary and we apply "the same test the district court should have utilized initially." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

## A. Did Defendant Owe Plaintiff Any Duty?

"Federal courts sitting in diversity cases must apply the substantive laws of the states in which they sit...." *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 487 (3d Cir.1985); *see Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Accordingly, the district court was obliged to apply Pennsylvania law. Nevertheless, the district court presumably based its conclusion that defendant did not owe plaintiff any duty on general policy considerations independent of Pennsylvania law.[1] In so doing, the district court failed to appreciate that "[a] federal court's independent determination of policy is quite irrelevant ... if it is inconsistent with the state law which the court is obliged to apply." *System Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1142 (3d Cir.1977). Thus, because the district court failed to apply state law in concluding that defendant did not owe plaintiff any duty, we do not address that basis for its decision. Accordingly, we turn to whether, under Pennsylvania law, defendant breached the duty it owed to plaintiff—the alternate basis the district court gave for its judgment.

## B. The Extent of Defendant's Duty Under Pennsylvania Law

■ Under Pennsylvania law, "[t]he standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespassor [sic], licensee, or invitee." *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120, 123 (1983). It is undisputed that plaintiff was a trespasser. It is also undisputed that, in general, under Pennsylvania law a landowner owes a trespasser a duty only to refrain from wilful or wanton misconduct. *See, e.g., Evans v. Philadelphia Transp. Co.*, 418 Pa. 567, 212 A.2d 440, 442 (1965) ("The legal obligation to trespassers is the avoidance of wilful or wanton misconduct." (emphasis omitted)). Plaintiff argues, however, that he fell within an exception to the general rule.

As set forth in his brief, plaintiff asserts that he was a "foreseeable trespasser" under Pennsylvania law.[2] He then makes a further broad assertion that "[w]ith respect to foreseeable trespassers, the landowner has a duty to exercise reasonable care." For purposes of the remainder of our analysis we shall assume, without deciding, that plaintiff was a foreseeable trespasser. We turn to a review of the cases that plaintiff relies on to support his argument that, as a foreseeable trespasser, he was owed a duty of reasonable care.

### 1. Cases Relied Upon By Plaintiff

■ In his brief, plaintiff relies on four cases to support his argument that defendant owed him a duty of reasonable care. *See Cummings v. Borough of Nazareth*, 427 Pa. 14, 233 A.2d 874, 877 (1967); *Cheslock v. Pittsburgh Rys.*, 363 Pa. 157, 69

---

1. The district court stated:
   I do not believe that as a matter of law a duty should be imposed upon the defendant, the owner of a swimming pool on a large fenced-in campus around which pool itself is a six-foot fence, to the plaintiff, or any other person using the pool without the owner's permission. That is to say, the sum total of policy considerations lead me to conclude that the plaintiff is not entitled to protection from the defendant under the uncontroverted facts of this case.
   (Tr. op. at 14). In reaching this conclusion, the district court relied heavily on two hornbooks and a district court opinion from another circuit. *See id.* at 10–14 (relying upon Prosser &

Keeton on the Law of Torts (5th ed. 1984); Modern Tort Law (rev. ed.); *Vu v. Singer Co.*, 538 F.Supp. 26, 29 (N.D.Cal.1981), *aff'd*, 706 F.2d 1027 (9th Cir.), *cert. denied*, 464 U.S. 938, 104 S.Ct. 350, 78 L.Ed.2d 315 (1983)).

2. Plaintiff claims that his trespass was foreseeable because defendant knew, or should have known, that *persons frequently trespassed at its swimming pool. See* Restatement (Second) of Torts § 334 cmt. d (1965) (recognizing that a trespasser is foreseeable if the landowner "know[s], or from facts within his knowledge should know, that persons constantly and persistently intrude upon some particular place within the land").

A.2d 108, 111 (1949); *Frederick v. Philadelphia Rapid Transit Co.*, 337 Pa. 136, 10 A.2d 576, 578 (1940); *Bethay v. Philadelphia Housing Auth.*, 271 Pa.Super. 366, 413 A.2d 710, 716 (1979). In two of these cases, the Pennsylvania Supreme Court cites Section 334 of the Restatement (Second) of Torts (1965) with apparent approval. *See Cheslock*, 69 A.2d at 111; *Frederick*, 10 A.2d at 578. Section 334 is entitled "Activities Highly Dangerous to Constant Trespassers on Limited Area." It states:

> § 334 Activities Highly Dangerous to Constant Trespassers on Limited Area
>
> A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area thereof, is subject to liability for bodily harm there caused to them by his failure to carry on an activity involving a risk of death or serious bodily harm with reasonable care for their safety.

Restatement (Second) of Torts § 334 (1965).

We note that Section 334 speaks in terms of "activities" carried on by a landowner. Plaintiff was injured when trespassing at defendant's closed and winterized swimming pool. We do not believe that by merely having such a pool on its premises defendant was "carry[ing] on an activity" under Section 334. Rather, we conclude that, under the Restatement, defendant's swimming pool was an "artificial condition." *See, e.g.,* Restatement (Second) of Torts §§ 335, 339 (1965).

Our conclusion that a pool is an artificial condition rather than an activity is supported by the numerous swimming pool cases brought under the attractive nuisance doctrine—Section 339 of the Restatement (Second) of Torts (1965). *See, e.g., Fletcher v. Hale*, 548 So.2d 135, 136 (Ala. 1989) ("The swimming pool was an artificial condition upon [defendant's] land."). Section 339 is entitled *"Artificial Conditions* Highly Dangerous to Trespassing Children." (emphasis added). Accordingly, neither *Cheslock* nor *Frederick*, which involve activities rather than artificial conditions, supports plaintiff's argument.

The third case plaintiff relies upon to support his argument that defendant owed him a duty of reasonable care involves the duty of care owed by a landowner under Section 339 of the Restatement. *See Bethay*, 413 A.2d at 715 (citing Section 339 of the Restatement (Second) of Torts (1965)). As we noted earlier, Section 339 does apply to artificial conditions such as swimming pools. In any event, Section 339 only applies if the trespasser is a child. It has no application to this case because plaintiff was an adult on the date of his accident. Accordingly, *Bethay* does not support plaintiff's argument.

Finally, plaintiff relies upon a case involving a landowner's duty to an invitee for injuries caused by a design defect in a swimming pool. *See Cummings*, 233 A.2d at 877. Because *Cummings* did not involve a trespasser, it does not support plaintiff's argument that defendant owed him a duty of reasonable care.

We have reviewed the cases cited by plaintiff and conclude that they do not support plaintiff's argument. When considered in context, the language plaintiff quotes from these cases is, at best, dicta regarding our issue—the duty owed by a landowner to a foreseeable adult trespasser for injuries caused by an artificial condition created or maintained by the landowner. Accordingly, we turn to a review of Pennsylvania cases on this issue. We begin our analysis with decisions of the Supreme Court of Pennsylvania because we must predict how that court would decide this issue. *See Erie*, 304 U.S. at 78, 58 S.Ct. at 822.

### 2. Pertinent Pennsylvania Caselaw

In the most recent case on this issue decided by the Supreme Court of Pennsylvania, a trespasser jumped to her death from the roof of an apartment building. *See Engel v. Friend's Hospital*, 439 Pa. 559, 266 A.2d 685 (1970). The decedent's husband alleged that the landowner maintained a dangerous condition: 1) by not locking the door to the roof; 2) by not limiting access to the roof to tenants; and 3) by not fencing in the roof. *Id.*, 266 A.2d at 686. He also alleged that his wife's trespass was foreseeable because the landowner knew that the roof had been the site

of prior suicides and attempted suicides. *Id.* The court affirmed the dismissal of the complaint after concluding that the complaint failed to aver wilful or wanton negligence. *Id.*, 266 A.2d at 687. It stated: "Plaintiff was a trespasser who could recover only if defendant was guilty of wilful or wanton negligence or misconduct." *Id.; see also Costanza v. Pittsburgh Coal Co.*, 276 Pa. 90, 119 A. 819, 820 (1923) (recognizing in dicta that a landowner would owe an adult trespasser "no duty except that of refraining from willfully or wantonly inflicting injury" from an electrical transformer maintained by the landowner).

We recognize that *Engel* was decided over twenty years ago. Nevertheless, more recent decisions of the Superior Court of Pennsylvania convince us that *Engel's* statement of the duty of care is still good law. Over ten years after *Engel* was decided, the Superior Court considered this issue. *See Antonace v. Ferri Contracting Co.*, 320 Pa.Super. 519, 467 A.2d 833 (1983). In *Antonace*, a trespasser was killed while riding his dirt bike when he struck a steel cable that a landowner had strung across a roadway. The landowner did not dispute that it knew that dirt bikers frequently rode over its property. *Id.*, 467 A.2d at 836. The court relied on *Engel* in concluding that the duty the landowner owed the trespasser was only to refrain from wilful or wanton misconduct even though "a jury could conclude that [the landowner] knew that dirt bike riders such as the decedent were using the property." *Id.*, 467 A.2d at 837.

More recently, the Superior Court expressly rejected the argument that a landowner owes a foreseeable adult trespasser a duty of reasonable care to prevent injuries from artificial conditions. *See Graham v. Sky Haven Coal, Inc.*, 386 Pa.Super. 598, 563 A.2d 891, 896 n. 8 (1989), *allocatur granted*, 525 Pa. 600, 603, 575 A.2d 566, 568 (1990), *appeal discontinued*, June 27, 1990. In *Graham*, the plaintiff argued that the trial court erred in refusing to instruct the jury that plaintiff was owed a duty of reasonable care as set forth in Section 335 of the Restatement (Second) of Torts (1965).[3] In rejecting plaintiff's argument, the Superior Court stated: "Section 335 [has] not been adopted by [the Supreme Court of Pennsylvania and] it is contrary to the long recognized rule in this Commonwealth, i.e., that a plaintiff who is a trespasser can recover only if the defendant is guilty of wanton or wilful misconduct." *Graham*, 563 A.2d at 897 n. 8 (quoting *Franc v. Pennsylvania R.R.*, 424 Pa. 99, 225 A.2d 528, 531 (1967) (Jones, J., dissenting)).

Although it might be expected that a court that arguably recognizes a heightened duty to foreseeable trespassers for activities would also recognize a heightened duty for artificial conditions, such is not always the case. Instead, "[c]ourts are far readier to invoke the duty of care and the concept of negligence where they find active conduct than where they find a mere condition of the premises." Fowler V. Harper, et al., *The Law of Torts* § 27.6, at 188 (1986). Accordingly, Pennsylvania courts have traditionally been much more willing to hold a landowner liable to a trespasser for "activities" than for "artificial conditions." *See* Laurence H. Eldredge, *Tort Liability to Trespassers*, 12 Temp. L.Q. 32, 32 (1937) (discussing Pennsylvania law;

---

**3.** Section 335 is the Restatement provision encompassing landowner liability to foreseeable trespassers for injuries caused by artificial conditions. It states:

§ 335 Artificial Conditions Highly Dangerous to Constant Trespassers on Limited Area

A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if

(a) the condition

(i) is one which the possessor has created or maintains and

(ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespassers and

(iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and

(b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

Restatement (Second) of Torts § 335 (1965).

"[T]he liability of a possessor [of land] for harm caused by his *active* conduct on the land must be sharply distinguished from the liability arising out of *conditions* existing upon the land."); Note, *Those Weasel Words—"Wilful and Wanton"*, 92 U.Pa. L.Rev. 431, 435–36 (1944) (recognizing that a proper understanding of Pennsylvania law requires that one "keep in mind ... the distinction between the liability arising from active conduct on land and that arising out of conditions upon the land").

The Supreme Court of Pennsylvania expressly recognizes this same distinction between liability for activities as opposed to liability for artificial conditions in the closely analogous situation of gratuitous licensees. *See Congini v. Portersville Valve Co.*, 504 Pa. 157, 470 A.2d 515, 519 (1983) ("[A]ppellant's injuries at most would seem to have resulted from 'existent conditions upon the premises' ... as opposed to 'any affirmative or "active" negligence on [the defendant's] part.' In such a case a possessor of land is not liable to a licensee in the absence of willful and wanton injury." (quoting *Potter Title & Trust Co. v. Young*, 367 Pa. 239, 80 A.2d 76, 79 (1951))).

### 3. Conclusion As to Duty Owed to Plaintiff

■ After a review of the cases cited by plaintiff and an extensive review of Pennsylvania caselaw, we believe that the Supreme Court of Pennsylvania would conclude that defendant owed the plaintiff a duty only to refrain from wilful and wanton misconduct. In what is undoubtedly the most famous case involving the standard of care owed to trespassers under Pennsylvania law, the United States Supreme Court instructed that we are bound to follow state law on the duty of care, even though we might believe that a different rule would be preferable. *See Erie v. Tompkins*, 304 U.S. 64, 78–80, 58 S.Ct. 817, 822–824, 82 L.Ed. 1188 (1938); *accord West v. American Tel. & Tel. Co.*, 311 U.S. 223, 236, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940) (stating that federal courts are bound to follow state law even though they believe that "the rule is unsound in principle or that another is preferable.").

The district court concluded that defendant's actions did not rise to the level of wilful or wanton misconduct as a matter of law. We turn to a review of that conclusion.

### C. Was Defendant Guilty of Wanton Misconduct?

■ For purposes of this appeal, plaintiff concedes in his brief that defendant did not engage in wilful misconduct. Accordingly, we focus on whether defendant was guilty of wanton misconduct. In a recent decision, the Superior Court of Pennsylvania stated:

> Wanton misconduct ... means that an actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the consequences, and not a desire to bring them about; as such, actual prior knowledge of the particular injured person's peril is not required. It is enough that the actor realizes, or at least has knowledge of sufficient facts that would cause a reasonable man to realize, that a peril exists, for a sufficient time beforehand to give the actor a reasonable opportunity to take means to avoid the injured person's accident; the actor is wanton for recklessly disregarding the danger presented.

*Ott v. Unclaimed Freight Co.*, 395 Pa.Super. 483, 577 A.2d 894, 897 (1990) (quoting *Graham v. Sky Haven Coal, Inc.*, 386 Pa.Super. 598, 563 A.2d 891, 899 (1989) (Brosky, J., concurring), *allocatur granted*, 525 Pa. 600, 603, 575 A.2d 566, 568 (1990), *appeal discontinued*, June 27, 1990).

The question thus becomes: Could a reasonable jury conclude that by not filling the pool to its full depth, and not posting warning signs or taking other precautionary measures, defendant's conduct was of an unreasonable character, in disregard of a risk known to it or so obvious that defendant must be taken to have been aware of it and so great as to make it highly probable that harm would follow?

We shall assume on this record that defendant was aware that trespassers were using the pool. On such assumption, plaintiff argues that this record was sufficient to create a jury issue as to whether defendant was guilty of wanton negligence in not taking steps to avoid injury to trespassers who might dive into the pool.

As set forth in his brief, plaintiff relies on four facts:

1. "The pool area was unlit."
2. "The water level was low...."
3. "There were no warnings posted."
4. "There was no pool cover...."

Before we can address the facts relied upon by plaintiff, we must determine whether a jury could reasonably charge defendant with "actual" awareness of the risk or with "constructive" awareness of it because it was obvious.

We do not believe that defendant could reasonably be charged with knowledge, in either sense, that a trespasser might dive in the middle of the unlighted pool at night without checking the water level. We so conclude because, in our view, the particular risk here was not "known" or "obvious" to defendant within those requirements of Pennsylvania law. It follows, furthermore, that a jury could not reasonably conclude that the risk arising from the partially filled pool was so great that it was "highly probable" that this particular injury to plaintiff would eventuate. Thus, because defendant cannot be charged with actual or constructive knowledge of the risk under Pennsylvania law, the defendant's "failures" that are relied upon by the plaintiff are irrelevant. Thus, plaintiff did not make a showing that negated defendant's right to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–28, 106 S.Ct. 2548, 2552–55, 91 L.Ed.2d 265 (1986).

## III. CONCLUSION

The order of the district court granting summary judgment for defendant will be affirmed.